1

2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3

4   ANGELA UNDERWOOD, Personal          )
    Representative for the Estate of Tyler )

5   Underwood                           )        Case No.: 2:21-cv-01766-GMN-NJK
                                        )

6              Plaintiff,               )        **ORDER**
        vs.                             )

7                                       )
    O'REILLY AUTO PARTS, INC., *et al.*, )

8                                       )
              Defendants.               )

9                                       )

10

11          Pending before the Court is Defendants Omni Industries, LLC and Omni Specialty

12  Packaging, LLC's (collectively "Omni Defendants'") Motion to Dismiss, (ECF No. 240).

13  Plaintiff Angela Underwood[1] ("Plaintiff") filed a Response, (ECF No. 244), to which the Omni

14  Defendants filed a Reply, (ECF No. 245).

15          Further pending before the Court is Defendant Amalie Oil Company's ("Defendant

16  Amalie's") Motion to Dismiss, (ECF No. 229).  Plaintiff filed a Response, (ECF No. 242), to

17  which Defendant Amalie filed a Reply, (ECF No. 243).

18          For the reasons discussed below, the Court **GRANTS** the Omni Defendants' Motion to

19  Dismiss, and **GRANTS** Defendant Amalie's Motion to Dismiss.

20

21

22

23

24  [1] On March 10, 2022, an Emergency Joint Motion for Extension of Discovery Deadlines was filed stating that
    the original plaintiff, Tyler Underwood, died during the pendency of this action. (J. Mot. Extension Disc.
    Deadlines 9:4–10, ECF No. 112).  Tyler Underwood's counsel subsequently filed a Motion to Substitute Angela

25  Underwood, Tyler Underwood's mother, as the plaintiff in this case. (*See generally* Mot. Substitute, ECF No.
    116).  The Court later granted Tyler Underwood's Motion to Substitute Party. (ECF No. 138).  Accordingly,
    Angela Underwood is now the plaintiff in this lawsuit.

## I.    BACKGROUND

This case arises from Tyler Underwood's alleged personal injuries caused by his exposure to benzene contained in products sold by O'Reilly Auto Parts, Inc., Illinois Tool Works, Inc., The Blaster Corporation, CRC Industries, Inc., Safety-Kleen, Highland Stores, Inc., Bi-Rite Markets, Inc., 7-Eleven, Inc., Richard A. Haley, Autozone Stores, LLC, Amrep, Inc., Advance Stores Company, Incorporation, Ashland, LLC, Calumet Branded Products, LLC, Sunnyside Corporation, W.M. Barr & Company, Technical Chemical Company, RM Markets, Inc., the Omni Defendants, Defendant Amalie, Citgo Petroleum Corporation, and Tower Energy Group in the State of Nevada. (Am. Compl. ¶¶ 6, 20–21, ECF No. 156).  From 2006 to 2020, Tyler Underwood repaired, restored, and maintained vehicles and equipment in Nevada and Arizona. (*Id.* ¶¶ 11–18).  Plaintiff alleges that while working, Tyler Underwood was exposed to benzene from products manufactured, marketed, supplied, distributed, and sold by the aforementioned companies. (*Id.* ¶¶ 20–21).  As a result of his exposure to benzene, Plaintiff alleges that Tyler Underwood developed a myriad of health complications, including Acute Myelogenous Leukemia, multiple related blood and bone marrow effects, cellular abnormalities, anemia, genotoxic effects, and DNA damage which ultimately resulted in his death. (*Id.* ¶¶ 22–23).

As relevant here, Tyler Underwood used brake fluid and motor oil fluid sold by O'Reilly Auto Parts ("O'Reilly"). (Tyler Underwood Dep. 37:1–23, 47:1–49:24, Ex. A to Resp. to Amalie Mot. Dismiss ("MTD"), ECF No. 242-2).  The Omni Defendants and Defendant Amalie supplied O'Reilly with said brake transmission fluid and motor oil fluid. (O'Reilly Auto Enterprises Interrogatories 15:14–16, Ex. C to Resp. to Omni Defendants MTD, ECF No. 244-2); (Ray Iseminger ("Iseminger") Dep. 33:21–34:6, Ex. C to Defendant Amalie MTD, ECF No. 229).  However, neither the Omni Defendants nor Defendant Amalie directly sent these products to an O'Reilly store in Nevada. (David Barber ("Barber") Affidavit ¶ 8, Ex. A to

1    Omni Defendants MTD, ECF No. 240-1); (Harry J. Barkett ("Barkett") Decl. ¶ 13–14, Ex. A to

2    Amalie MTD, ECF No. 229).  Instead, both companies sent their products to O'Reilly

3    distribution centers located in California and Arizona.[2] (Iseminger Dep. 62:17–63:13, 67:3–18,

4    Ex. C to Defendant Amalie MTD).  O'Reilly in turn maintained full discretion to determine

5    which state-specific O'Reilly store received the products. (*Id*. at 66:2–67:18, Ex. C to

6    Defendant Amalie MTD).  O'Reilly utilizes a portal which allows suppliers, like the Omni

7    Defendants and Defendant Amalie, to see which distribution center their products are sent to,

8    and ultimately, which state-specific O'Reilly store would receive the products. (*Id.* at 63:7–22,

9    65:20, Ex. C to Defendant Amalie MTD).

10         Defendant Amalie is a Florida corporation with its principal place of business in Florida.

11   (Barkett Decl. ¶ 3, Ex. A to Defendant Amalie MTD).  The Omni Defendants are Louisiana

12   corporations with their principal place of business in Louisiana. (Barber Affidavit ¶ 6, Ex. A to

13   Omni Defendants MTD).  Neither the Omni Defendants nor Defendant Amalie are authorized

14   to do business in Nevada, have any office or employee in Nevada, own any property in Nevada,

15   or advertise in Nevada. (Barkett Decl. ¶ 4, Ex. A to Defendant Amalie MTD); (Barber Affidavit

16   ¶ 7, Ex. A to Omni Defendants MTD).  Both the Omni Defendants and Defendant Amalie

17   maintain websites which—based on the images provided by Plaintiff—show general

18   information about the respective companies and their products.  Specifically, the Omni

19   Defendants' website states they supply "approximately 15% of the US aftermarket with brake

20   fluid." (Omni Defendants Website at 12, Ex. B to Resp. to Omni Defendants MTD, ECF No.

21   244-2).  The Omni Defendants' website further provides they are a "three generation family

22   enterprise conducting business in markets local, regional, throughout North America, and

23   around the globe." (*Id.*, Ex. B to Resp. to Omni Defendants MTD).  Defendant Amalie's

24   _____

25   [2] The Omni Defendants acknowledge that they shipped other fluids directly into Nevada but contend that these
     fluids "are not the same or similar" to the fluids alleged in Plaintiff's Amended Complaint. (David Barber
     Affidavit ¶ 9, Ex. A to Omni Defendants MTD).

1    website states that it "ship[s] products to every State in American and to over 100 foreign

2    countries." (Defendant Amalie Website at 14, Ex. C to Resp. to Defendant Amalie MTD, ECF

3    No. 24-2).

4         Plaintiff filed the instant Amended Complaint asserting the following claims: (1)

5    negligence; (2) gross negligence; (3) strict liability; (4) breach of the express and implied

6    warranties; and (5) *res ipsa loquitor*. (Am. Compl. ¶¶ 35–4).  The Omni Defendants and

7    Defendant Amalie subsequently filed the present Motions to Dismiss, (ECF No. 229, 240),

8    contending that this Court lacks personal jurisdiction over them, thereby moving to dismiss

9    Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(2).

10   **II.    LEGAL STANDARD**

11        "Federal courts ordinarily follow state law in determining the bounds of their

12   jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R.

13   Civ. P. 4(k)(1)(A)).  "Nevada's long-arm statute permits the exercise of jurisdiction on any

14   basis consistent with federal due process." *Elko Broadband Ltd. v. Haidermota BNR*, No. 3:20-

15   cv-00293, at *2 (D. Nev. Mar. 11, 2021) (citing NRS § 14.065(1)).  The Due Process Clause

16   limits a state's power to exercise control over a nonresident defendant. *Walden v. Fiore*, 571

17   U.S. 277, 283 (2014).  To protect a defendant's liberty, due process necessities that a

18   nonresident defendant have "certain minimum contacts" with a forum state before that state can

19   exercise personal jurisdiction over that individual or entity. *Int'l Shoe Co. v. Washington*, 326

20   U.S. 310, 316 (1945).

21        There are two types of jurisdiction—general and specific. *Picot v. Weston*, 780 F.3d

22   1206, 1211 (9th Cir. 2015).  General jurisdiction depends on the defendant's "substantial,

23   continuous and systematic" contracts with the forum, "even if the suit concerns matters not

24   arising out his contacts with the forum." *Id*.  Specific jurisdiction exists "where the cause of

25   action arises out of or has substantial connection to the defendant's contact with the forum.

1  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain, Co.*, 284 F.3d 1114, 1123 (9th Cir.

2  2002).  If a defendant has sufficient minimum contacts for the court to have personal

3  jurisdiction over the defendant, the exercise of such jurisdiction must also be reasonable. *Asahi*

4  *Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).

5       Fed. R. Civ. P. 12(b)(2) allows a district court to dismiss an action for lack of personal

6  jurisdiction.  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

7  is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal

8  jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys.,*

9  *Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  "A plaintiff must establish

10 jurisdiction over each defendant individually." *Zuercher v. Hoskins*, No. 4:21-cv-05142, 2021

11 WL 6551433, at *2 (N.D. Cal. Dec. 16, 2021).  The court "may order discovery on the

12 jurisdictional issues." *Unocal*, 248 F.3d at 922 (*citing Data Disc. Inc. v. Sys. Tech. Ass'n, Inc.*,

13 557 F.2d 1280, 1285 (9th Cir. 1977)).  "When a district court acts on the defendant's motion to

14 dismiss without holding an evidentiary hearing, the plaintiff need make only a *prima facie*

15 showing of jurisdictional facts to withstand" the motion. *Id*. (citing *Ballard v. Savage*, 65 F.3d

16 1495, 1498 (9th Cir. 1995)); *see also Data Disc*, 557 F.2d at 1285 ("[I]t is necessary only for

17 [the plaintiff] to demonstrate facts which support a finding of jurisdiction in order to avoid a

18 motion to dismiss.").

19      "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and

20 'conflicts between the facts contained in the parties' affidavits must be resolved in [the

21 plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction

22 exists.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129

23 (9th Cir. 2003) (citing *Unocal*, 248 F.3d at 922); *see also Bancroft & Masters, Inc. v. Augusta*

24 *Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  However, a court "may not assume the truth

25 ///

1    of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Enters.,*

2    *Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (citations and internal quotation marks omitted).

3    **III.   DISCUSSION**

4          The Omni Defendants and Defendant Amalie now move to dismiss Plaintiff's Amended

5    Complaint, arguing that the Court lacks both general and specific jurisdiction over them.[3]

6    (Omni Defendants MTD 8:25–11:12, ECF No. 240); (Defendant Amalie MTD 4:7–9:9, ECF

7    No. 229).  The Court will first examine the Omni Defendants Motion to Dismiss, followed by

8    Defendant Amalie's Motion to Dismiss.

9          **A.  Omni Defendants' Motion to Dismiss, (ECF No. 240)**

10         The Omni Defendants begin by contending that the Court lacks general personal

11   jurisdiction over them because they are incorporated in Louisiana and have their principal place

12   of business in Louisiana. (Omni Defendants MTD 8:28–9:2).  Plaintiff does not directly address

13   the Omni Defendants' argument regarding general personal jurisdiction, instead stating that

14   jurisdictional discovery is needed to determine if the Court truly has jurisdiction. (Resp. Omni

15   Defendants MTD 7:3–13:14, ECF No. 244).

16         **1.  General Jurisdiction**

17         Courts have general personal jurisdiction (or "general jurisdiction") over nonresident

18   defendants whenever the defendant's activities within the forum state are "continuous and

19   systematic." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952); *see also Yahoo!*

20   *Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006)

21   (finding general personal jurisdiction requires that the defendant's contacts with a forum be "so

22   substantial, continuous, and systematic that the defendant can be deemed to be present in that

23   _____

24   [3] The Court notes that Defendant Amalie's Motion to Dismiss solely argues that the Court lacks specific
     jurisdiction over it, otherwise making no reference to general jurisdiction. (Defendant Amalie MTD 4:7–9:9).
25   Nevertheless, as the Omni Defendants raised this argument, and a corollary to the Court not having personal
     jurisdiction is that it lacks both general and specific jurisdiction, it assumes that Defendant Amalie also contends
     that the Court lacks general jurisdiction over it.

1   forum for all purposes") (internal quotations omitted).  General jurisdiction has "an exacting

2   standard . . . because a finding of general jurisdiction permits a defendant to be haled into court

3   in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v.*

4   *Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Only when a corporation's contacts

5   with a state are "so substantial and of such a nature as to render the corporation at home in that

6   State" may the Court exercise general jurisdiction when the corporation's place of

7   incorporation and principal place of business are elsewhere. *Daimler AG*, 571 U.S. at 139 n.19

8   (explaining that the "place of incorporation and principal place of business are paradig[m] . . .

9   bases for general jurisdiction") (citations and internal quotation marks omitted).  Only in an

10  "exceptional case" will general jurisdiction be available outside of where a corporation is

11  incorporated or has its principal place of business. *Martinez v. Aero Caribbean*, 764 F.3d 1062,

12  1070 (9th Cir. 2014).

13      Here, the Court lacks general jurisdiction over the Omni Defendants.  Plaintiff does not

14  allege that the Omni Defendants are incorporated in or has a principal place of business in

15  Nevada, (*see* Am. Compl. ¶ 6(s), (t)), and the Omni Defendants have provided uncontroverted

16  evidence showing that their state of incorporation and principal place of business is in

17  Louisiana. (Barber Affidavit ¶ 6, Ex. A to Omni Defendants MTD).  Moreover, the Omni

18  Defendants alleged in-state activities are not so continuous and systematic to render them

19  essentially at home in Nevada.  Plaintiff generally alleges that the Omni Defendants

20  "manufactured, marketed, supplied, distributed, and/or sold benzene-containing products,

21  including, but not limited to, brake cleaners, carburetor cleaner, parts washing machine,

22  penetrating oils, lubricants, degreasers, cleaning solvents, transmission fluids, brake fluids,

23  automatic steering fluids, gasoline, diesel fuel, lacquer thinner, mineral spirits and other similar

24  products . . . ." (*Id*. ¶ 20).  But Plaintiff's Amended Complaint fails to allege that any of these

25  activities occurred in Nevada, and the uncontroverted evidence provided by the Omni

1   Defendants demonstrates that they conducted all the alleged activities in Louisiana. (Barber

2   Affidavit ¶ 8, Ex. A to Omni Defendants MTD).  "Even if [the Omni Defendants had]

3   conducted regular business in [Nevada], this fact alone, without more, would be insufficient to

4   render them 'at home' in [Nevada]." *Kinnee v. TEI Biosciences Inc.*, No. 22-cv-604, 2022 WL

5   14118943, at *3 (S.D. Cal. Oct. 24, 2022); *see Wagner v. Terumo Med. Corp.*, No. 18-cv-1007,

6   2018 WL 6075951, at *5 (S.D. Cal. Nov. 21, 2018) ("[E]ven if [p]laintiff could show that

7   [defendant] conducted regular business in California, that fact would still be insufficient to

8   render it 'at home' in the state.").  Accordingly, based on Plaintiff's allegations and the present

9   record, the Court lacks general jurisdiction over the Omni Defendants.

10          **2.  Specific Jurisdiction**

11          The Omni Defendants argue that the Court lacks specific personal jurisdiction over them

12   because Plaintiff fails to allege facts demonstrating that their conduct specifically targeted

13   Nevada. (Omni Defendants MTD 9:11–11:12).  Plaintiff again does not directly contest the

14   Omni Defendants' argument, instead contending that jurisdictional discovery is needed to

15   determine if this Court has jurisdiction. (Resp. Omni Defendants MTD 7:3–13:14).

16          The Ninth Circuit has established a three-prong test for analyzing a claim of specific

17   personal jurisdiction (or "specific jurisdiction"): (1) the non-resident defendant must

18   purposefully direct his activities or consummate some or consummate some transaction with

19   the forum or resident thereof; or perform some act by which he purposefully avails himself of

20   the privilege of conducting activities in the forum, thereby invoking the benefits and

21   protections of its laws; (2) the claim must be one which arises out of or relates to the

22   defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair

23   play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger*, 374 F.3d at 801; *see*

24   *also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (analyzing specific

25   jurisdiction under identical framework).  The plaintiff bears the burden of establishing the first

1  two prongs. *See Mavrix Photo, Inc.*, 647 F.3d at 1228. If the plaintiff does so, the burden shifts

2  to the defendant to argue that exercise of jurisdiction would be unreasonable. *Id.*

3      The Ninth Circuit has emphasized that under the first prong of the specific personal

4  jurisdiction test, purposeful availment and purposeful direction are two distinct concepts. "The

5  exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot*, 780

6  F.3d at 1212.  For claims sounding in contract, courts generally apply the "purposeful

7  availment" analysis, which considers whether a defendant "'purposefully avails itself of the

8  privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on

9  activities such as delivering goods or executing a contract." *Menken v. Emm*, 503 F.3d 1050,

10 1057 (9th Cir. 2007) (quoting *Schwarzenegger*, 374 F.3d at 802).  "'For claims sounding in

11 tort' where the alleged conduct took place outside the forum state," courts in the Ninth Circuit

12 apply a "purposeful direction test." *Strayer v. Idaho State Patrol*, No. 21-cv-35247, 2022 WL

13 685422, at *2 (9th Cir. Mar. 8, 2022) (citation omitted).  This test analyzes whether the

14 defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

15 harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433

16 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at 803).

17      Because Plaintiff's Amended Complaint sounds in both tort (negligence, gross

18 negligence, strict liability, *res ipsa loquitur*) and contract (breach of express and implied

19 warranty), both the purposeful direction and purposeful availment tests apply. *See Glob.*

20 *Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th

21 Cir. 2020) ("When both contract and tort claims are at issue, both tests are relevant.");

22 *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 819-cv-01298, 2020 WL 9312379, at *3–4 (C.D.

23 Cal. Apr. 22, 2020) (applying both tests where plaintiffs brought "claims sounding in tort, such

24 as fraud, and claims sounding in contract, such as breach of express warranty"); *Kinnee*, 2022

25 WL 14118943, at *5 (applying both tests).

1

### a. Purposeful Direction

2    As stated, "'[f]or claims sounding in tort' where the alleged conduct took place outside

3 the forum state," courts in the Ninth Circuit apply a "purposeful direction test." *Strayer*, 2022

4 WL 685422, at *2.  This test analyzes whether the defendant "(1) committed an intentional act,

5 (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

6 suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at

7 803).   Here, the Court finds that that Plaintiff fails to demonstrate the second prong, namely

8 that the Omni Defendants' conduct was expressly aimed at Nevada.

9    Express aiming "is satisfied when the defendant is alleged to have engaged in wrongful

10 conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."

11 *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000); *see also*

12 *Calder*, 465 U.S. at 788.  However, "simply placing a product into the stream of commerce

13 does not constitute a purposeful act directed toward the forum state." *Ariix, LLC v. NutriSearch*

14 *Corp.*, No. 17-cv-320, 2022 WL 837072, at *3 (S.D. Cal. Mar. 21, 2022) (citation omitted).

15 Indeed, placing "a product into the stream of commerce"—even if the defendant is aware "that

16 the stream of commerce may or will sweep the product into the forum state"—"does not

17 convert the mere act of placing the product into the stream of commerce into act" of purposeful

18 availment. *Holland Am. Line Inc. v. Wartsila N. Am.*, 485 F.3d 450, 459 (9th Cir. 2007).

19    Plaintiff's Response presents two ways of finding express aiming.   First, Plaintiff posits

20 that express aiming can be found based on a theory of imputation, specifically that because the

21 Omni Defendants' supplied products to O'Reilly, who in turn sold said products in Nevada, it is

22 plausible that the Omni Defendants knew that some of their products would end up in Nevada.

23 (Resp. Omni Defendants MTD 5:3–7:2).  Second, Plaintiff states that express aiming can be

24 found based on the Omni Defendant's website. (*Id*. 4:6–27).  Each will be examined in turn.

25 ///

1

i.      *Relationship With O'Reilly*

2        At its core, Plaintiff's first theory is that the Omni Defendants knowingly maintained an

3   open channel through O'Reilly by which its products could be sold directly to Nevada

4   consumers, and that this awareness constitutes express aiming, even in the absence of targeted

5   marketing towards Nevada.  This, however, is not enough to satisfy due process.

6        The record before the Court shows that the Omni Defendants shipped their products to

7   O'Reilly distribution centers located in California and Arizona, and that O'Reilly maintained

8   complete discretion to send these products into Nevada. (Iseminger Dep. 66:2–67:18, Ex. C to

9   Defendant Amalie MTD).  Even assuming that the Omni Defendants knew their products were

10  destined for Nevada, "such knowledge would be insufficient to establish that [the Omni

11  Defendants] expressly aimed [their] conduct at [Nevada]." *Anaya v. Machines de Triage et*

12  *Broyage*, No. 18-cv-01731, 2019 WL 1083783, at *4 (N.D. Cal. Mar. 7, 2019).  As stated,

13  "placing a product into the stream of commerce, without more, does not constitute an act

14  purposefully directed to the forum State." *Cameron v. Thomson International, Inc.*, No. 21-cv-

15  17, 2021 WL 340999, at *5 (D. Mont. July 19, 2021) (citation omitted).

16       Here, the Omni Defendants have no facilities or property in Nevada; none of its

17  employees reside or are domiciled in Nevada; and all of its activities occur in Louisiana.  The

18  Omni Defendants awareness that O'Reilly distributed some of its product in Nevada, standing

19  alone, is insufficient to satisfy the expressly aimed test. *See Arix*, LLC, 2022 WL 837072, at *3

20  ("Noticeably lacking from [plaintiff's] complaint are any allegations about [defendant's]

21  forum-specific conduct, such as, perhaps, any direct efforts to sell or advertise its products in

22  California, tailor its products or advertisements specifically for California, or instruct its sales

23  representatives to focus on the California market."); *Kinnee*, 2022 WL 14118943, at *6

24  ("Plaintiff provides no information on whether the SurgiMend device was sold in California or

25  marketed to a California audience; whether the marketing and promotion of the SurgiMend

1  device was performed through a website, in-person sales efforts, or otherwise; or whether the

2  post-market surveillance entailed any contacts with or targeting of the California market.");

3  *Cameron*, 2021 WL 3409999, at *5 (D. Mont. July 19, 2021) (finding no specific jurisdiction

4  where "Thomson does not grow any produce specifically for the Montana market; does not

5  direct any of its advertising to specifically toward Montana residents or advertise in any

6  publications or websites directed primarily toward Montana; and has no direct customers in

7  Montana").  Accordingly, as Plaintiff's depiction of the facts merely tends to show that the

8  Omni Defendants placed their product into the stream of commerce, and that it was O'Reilly

9  which determined what products were destined for Nevada, the relationship between the

10 companies is insufficient o vest the Court with specific jurisdiction over the Omni Defendants.

11 *See Elliot v. Cessna Aircraft Co.*, No. 820-cv-000378, 2021 WL 2153820, at *3 (C.D. Cal. May

12 25, 2021) ("A defendant is required to do 'something more'—namely, the defendant, must

13 engage in 'conduct directly targeting the forum,' such as to display content or advertisements

14 that 'appeal[] to, and profit[] from, an audience in a particular state.'") (citation omitted).

15                              *ii.   Omni Defendants' Website*

16       The only other link relied on by Plaintiff is the Omni Defendants' website. (Resp. Omni

17 Defendants MTD 4:6–27); (Omni Defendants Website at 12, Ex. B to Resp. to Omni

18 Defendants MTD, ECF No. 244-2).  As relevant here, Plaintiff relies on the portion of the

19 Omni Defendants' website which states that they "have grown to be a three-generation family

20 enterprise conducting business in markets local, regional, throughout North America, and

21 around the globe." (Resp. Omni Defendants MTD 4:25–27); (Omni Defendants Website at 12,

22 Ex. B to Resp. to Omni Defendants MTD).  At most, this statement supports the proposition

23 that the Omni Defendants maintain a passive website which targets a broad audience.  It does

24 not support the contention that the operation of this website demonstrates that the Omni

25 Defendants engaged in conduct directly targeting Nevadans.

1    Specifically, operating a passive website without any apparent intention to target the

2    forum is not sufficient for purposeful direction, *see Pebble Beach Co.*, 453 F.3d at 1154–57,

3    but "designing the product for the market in the forum State, advertising in the forum State,

4    establishing channels for providing regular advice to customers in the forum State, or

5    marketing the product through a distributor who has agreed to serve as the sales agent in the

6    forum State" can satisfy the "something more" requirement, *see LNS Enters.*, 22 F.4th at 861

7    (quotation omitted).

8    Here, there is no evidence that a Nevadan customer could order products or otherwise

9    transact business with the Omni Defendants on the website, let alone that such transactions

10   occurred between Nevada residents and the Omni Defendants. *See be2 LLC v. Ivanov*, 642 F.3d

11   555, 559 (7th Cir. 2011) ("If the defendant merely operates a website even a highly interactive

12   website, that is accessible from, but does not target, the forum state, then the defendant may not

13   be haled into court in that state without offending the Constitution.").  Further, the website

14   contains no indicia that it has a specific focus on the Nevada market.  The simple fact that the

15   Omni Defendants' website is accessible to Nevadans is not enough to satisfy the express

16   aiming prong.  In short, the image of the Omni Defendants Website provided by Plaintiff has

17   only minimal interactivity and lacks any indication that the website was targeted at Nevada

18   residents in some way. *See Matus v. Premium Nutraceuticals, LLC*, No. 15-cv-01851, 2016 WL

19   3078745, at *3 (C.D. Cal. May 31, 2016) (finding that the "maintenance of a minimally

20   interactive website," without "something more," did not satisfy the express aiming prong).

### b.  Purposeful Availment

22   Purposeful availment is evaluated by determining whether the defendant availed itself of

23   conducting activities in the forum by "perform[ing] some type of affirmative conduct which

24   allows or promotes the transaction of business within the forum state." *Sinatra v. Nat'l*

25   *Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).  In conducting this analysis, the Supreme

1  Court has cautioned that a "defendant's transmission of goods permits the exercise of

2  jurisdiction only where the defendant can be said to have targeted the forum; as a general rule,

3  it is not enough that the defendant might have predicted that its goods will reach the forum

4  state." *J. McIntyre Machinery*, 564 U.S. at 882.

5       Here, Plaintiff has also failed to demonstrate that the Omni Defendants purposefully

6  availed itself of the privilege of conducting activities in Nevada.  For the reasons set forth

7  above, Plaintiff's Amended Complaint and Response is devoid of facts showing that the Omni

8  Defendants had any contacts with Nevada apart from placing a product into the stream of

9  commerce, which, without more, is insufficient to exercise specific jurisdiction over the Omni

10  Defendants. *See LNS Enters. LLC*, 22 F.4th at 860.

11       Therefore, the Court finds that Plaintiff has failed the first prong of the specific

12  jurisdiction test.  Because the Court finds that Plaintiff has not met either the purposeful

13  direction or purposeful availment tests, Plaintiff has failed to make a *prima facie* showing of

14  specific jurisdiction over the Omni Defendants; thus, "the Court need not address whether

15  Plaintiff's claim arise out of or relate to the [Omni Defendant's] forum-related activities or

16  whether the exercise of specific jurisdiction would comport with fair play and substantial

17  justice." *Kinnee*, 2022 WL 14118943, at *6; *Pebble Breach Co.*, 453 F.3d at 1155 ("Here,

18  [plaintiff's] arguments fail under the first prong.  Accordingly, we need not address whether the

19  claim arose out of or resulted from [defendant's] forum-related activities or whether an exercise

20  of jurisdiction is reasonable."); *Estate of Daher v. LSH Co.*, 575 F. Sup. 3d 1231, 1238–41

21  (C.D. Cal. 2021) (declining to address the second and third prongs of the specific jurisdiction

22  test after finding plaintiff failed to show defendant purposefully directed its activities to

23  California).

24  ///

25  ///

1

**B. Defendant Amalie's Motion to Dismiss, (ECF No. 229)**

2      Turning to Defendant Amalie's Motion to Dismiss, the Court begins by noting that it

3  does not have general jurisdiction over Defendant Amalie.  As with the Omni Defendants,

4  Defendant Amalie is an out-of-state company which is neither incorporated in nor has a

5  principal place of business in Nevada. (Barkett Decl. ¶ 3, Ex A to Defendant Amalie MTD).

6  And as with the Omni Defendants, Defendant Amalie's alleged in-state activities are not so

7  continuous and systematic to render them essentially at home in Nevada.  Specifically,

8  Defendant Amalie has provided evidence that it "does not conduct any business in Nevada; [i]t

9  is not registered or licensed to do business there; it does not own or lease any property there,

10  nor does it have any employees there." (Barkett Decl. ¶ 4, Ex. A to Defendant Amalie MTD).

11  Accordingly, based on Plaintiff's allegations and the record before the Court, the Court lacks

12  general jurisdiction over Defendant Amalie.

13      Furthermore, the Court finds that Plaintiff has failed to plead sufficient facts or

14  otherwise provide evidence for the Court to exercise specific jurisdiction over Defendant

15  Amalie.[4]  As with the Omni Defendants, Plaintiff relies on Defendant Amalie's relationship

16  with O'Reilly and its website in support of finding purposeful direction or availment. (Resp.

17  Defendant Amalie MTD 6:5–7:23).  As to the former, the sole fact that Defendant Amalie

18  placed its products with a distributor that sends an unspecified number of products to the forum

19  state is insufficient to satisfy specific jurisdiction.[5]  Further, like the Omni Defendants,

20

21  [4] Notably, it does not even appear that Plaintiff believes this Court has specific jurisdiction over Defendant
   Amalie, as evidenced by her assertion that she "is not arguing that the present facts demonstrate personal
22  jurisdiction over Amalie." (Resp. Defendant Amalie MTD 13:12–13).
   [5] Indeed, Defendant Amalie's relationship with O'Reilly is even more attenuated than the Omni Defendants.
23  Unlike the Omni Defendants, Defendant Amalie did not directly supply O'Reilly with products.  Instead,
   Defendant Amalie had a service contract with Ozark Purchasing, LLC, ("Ozark"), who in turn provided products
24  to O'Reilly.  Ozark is a "domestic limited liability company that maintains its principal office in Missouri."
   (Wright Dec. ¶ 4, Ex. B to Defendant Amalie MTD, ECF No. 243).  Ozark is not licensed to do business in
25  Nevada. (*Id*. ¶¶ 5–6, Ex B to Defendant Amalie MTD).  Defendant Amalie cannot be said to have purposefully
   directed or availed itself to Nevada by engaging companies outside of Nevada to distribute its product without
   control over the forums to which Ozark would send them. *See Chorost v. Rotor America Inc.*, No. 21-cv-00235,

1    Defendant Amalie is not authorized to do business in Nevada, has no offices in Nevada, and

2    owns no property in Nevada. *LNS Enters.*, 22 F.4th at 856–59.  As to the latter, Defendant

3    Amalie's website, like the Omni Defendants' website, is universally accessible and contains no

4    interactive features designed to target Nevadans. *Id*.  Thus, Plaintiff cannot satisfy the first

5    prong of the personal jurisdiction analysis.[6]

6          In sum, the Court finds that it lacks jurisdiction over the Omni Defendants and

7    Defendant Amalie.  Accordingly, the Court GRANTS the Omni Defendants and Defendant

8    Amalie's Motions to Dismiss.

9          **C.  Jurisdictional Discovery**

10         The Court next turns to Plaintiff's alternative request for leave to conduct jurisdictional

11   discovery against the Omni Defendants and Defendant Amalie. (Resp. Omni Defendants MTD

12   7:6–13:14); (Resp. Defendant Amalie MTD 7:27– 14:2).

13         The decision whether to grant jurisdictional discovery is typically within the discretion

14   of the district court. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th

15   Cir. 1977).  "[W]here pertinent facts bearing on the question of jurisdiction are in dispute,

16   discovery should be allowed." *American West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793,

17   801 (9th Cir. 1989).  However, "where a plaintiff's claim of personal jurisdiction appears to be

18

19

20   2022 WL 17361299, at *8 (D. Ariz. Aug. 8, 2022).  Indeed, "merely placing items with a national distributor that
     sends an unspecified number of products to the forum state is insufficient" to support specific jurisdiction. *Id*. at
     *6 (citation omitted).

21   [6] The Court further notes that Defendant Amalie's relationship with O'Reilly is even more attenuated than the
     Omni Defendants.  Unlike the Omni Defendants, Defendant Amalie did not directly supply O'Reilly with

22   products.  Instead, Defendant Amalie had a service contract with Ozark Purchasing, LLC, ("Ozark"), who in turn
     provided products to O'Reilly.  Ozark is a "domestic limited liability company that maintains its principal office

23   in Missouri." (Wright Dec. ¶ 4, Ex. B to Defendant Amalie MTD, ECF No. 243).  Ozark is not licensed to do
     business in Nevada. (*Id*. ¶¶ 5–6, Ex B to Defendant Amalie MTD).  Defendant Amalie cannot be said to have

24   purposefully directed or availed itself to Nevada by engaging companies outside of Nevada to distribute its
     product without control over the forums to which Ozark would send them. *See Chorost v. Rotor America Inc.*,

25   No. 21-cv-00235, 2022 WL 17361299, at *8 (D. Ariz. Aug. 8, 2022).  "Merely placing items with a national
     distributor that sends an unspecified number of products to the forum state is insufficient" to support specific
     jurisdiction. *Id*. at *6 (citation omitted).

both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co.*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

At its core, Plaintiff's argument is that jurisdictional discovery is needed to confirm the extent of the Omni Defendants and Defendant Amalie's relationship with O'Reilly. (Resp. Defendant Amalie MTD 8:24–27); (Resp. Omni Defendants 11:7–13).  Here, the uncontroverted evidence introduced by the Omni Defendants and Defendant Amalie showcase that they have no contacts with Nevada, and that it is O'Reilly who targets Nevada.  Thus, Plaintiff's "bare allegations" in the face of the record before the Court is insufficient to warrant jurisdictional discovery into the full extent of the Omni Defendants and Defendant Amalie's sales and affiliations with O'Reilly, and more generally Nevada. *See LNS Enters.*, 22 F.4th at 864 (affirming rejection of discovery request to "confirm the extent of [the defendants'] sales, advertisements, and affiliations . . . in the forum state"); *Wong v. Las Vegas Sands Corp.*, No. 2:21-cv-01553, 2022 WL 902419, at *4 (E.D. Cal. Mar. 28, 2022) ("The plaintiffs' other requests are based on hopes about what discovery might reveal about the defendants' sales, which are not enough to justify jurisdictional discovery."); *Cochran v. Air & Liquid Systems Corp.*, No. 2:21-cv-09612, at *11 n.8 (C.D. Cal. Oct. 13, 2022) ("[I]t appears that the Cochrans will likely employee jurisdictional discovery to 'confirm the extent of [Lockheed Martin's] sales, advertisements, and affiliations' in California.  Such a use, however, has been rejected by the Ninth Circuit.") (quoting *LNS Enters.*, 22 F.4th at 864).  Accordingly, Plaintiff's request for jurisdictional discovery is DENIED.

///

///

///

///

IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that the Omni Defendants' Motion to Dismiss, (ECF No. 240), and Defendant Amalie's Motion to Dismiss, (ECF No. 229), are **GRANTED**.

As the Motions to Dismiss proceed on an incurable jurisdictional defect, the Court finds amendment futile. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (listing "futility" among reasons to deny leave to amend).  Accordingly, the Motions are **GRANTED WITHOUT LEAVE TO AMEND.**

**IT IS FURTHER ORDERED** that Plaintiff's request for Jurisdictional Discovery is **DENIED**.

**DATED** this ___8___ day of February, 2023.

_____

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT