# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA UNDERWOOD, Personal Representative for the Estate of Tyler Underwood | ) ) ) )   Case No.: 2:21-cv-01766-GMN-NJK |
| Plaintiff, | )   **ORDER** ) |
| vs. | ) ) |
| O'REILLY AUTO PARTS, INC., *et al.*, | ) ) |
| Defendant. | ) ) ) |

 Pending before the Court is Defendant Tower Energy Group LLC's ("Defendant's") Motion to Dismiss and Motion for More Definite Statement, (ECF No. 258). Plaintiff Angela Underwood[1] ("Plaintiff") filed a Response, (ECF No. 265), to which Defendant did not file a Reply.

 For the reasons discussed below, the Court **DENIES** Defendant's Motion for More Definite Statement and **GRANTS** Defendant's Motion to Dismiss.

## I. BACKGROUND

 This case arises from Tyler Underwood's alleged personal injuries caused by his exposure to benzene contained in products sold by O'Reilly Auto Parts, Inc., Illinois Tool Works, Inc., The Blaster Corporation, CRC Industries, Inc., Safety-Kleen, Highland Stores, Inc., Bi-Rite Markets, Inc., 7-Eleven, Inc., Richard A. Haley, Autozone Stores, LLC, Amrep,

---

[1] On March 10, 2022, an Emergency Joint Motion for Extension of Discovery Deadlines was filed stating that the original plaintiff, Tyler Underwood, died during the pendency of this action. (J. Mot. Extension Disc. Deadlines 9:4–10, ECF No. 112). Tyler Underwood's counsel subsequently filed a Motion to Substitute Angela Underwood, Tyler Underwood's mother, as the plaintiff in this case. (*See generally* Mot. Substitute, ECF No. 116). The Court later granted Tyler Underwood's Motion to Substitute Party. (ECF No. 138). Accordingly, Angela Underwood is now the plaintiff in this lawsuit.

Inc., Advance Stores Company, Incorporation, Ashland, LLC, Calumet Branded Products, LLC, Sunnyside Corporation, W.M. Barr & Company, Technical Chemical Company, RM Markets, Inc., Omni Industries LLC, Omni Specialty Packaging, Amalie Oil Company, Citgo Petroleum Corporation, and Tower Energy Group in the State of Nevada ("Defendants"). (Am. Compl. ¶¶ 6, 20–21, ECF No. 184).  From 2006 to 2020, Tyler Underwood repaired, restored, and maintained vehicles and equipment in Nevada and Arizona. (*Id.* ¶¶ 11–18).  Plaintiff alleges that while working, Tyler Underwood was exposed to benzene from products manufactured, marketed, supplied, distributed, and sold by Defendants. (*Id.* ¶ 20–21).  As a result of his exposure to benzene, Plaintiff alleges that Tyler Underwood developed a myriad of health complications, including Acute Myelogenous Leukemia, multiple related blood and bone marrow effects, cellular abnormalities, anemia, genotoxic effects, and DNA damage which ultimately resulted in his death. (*Id.* ¶ 22–23).

   As relevant here, Plaintiff alleges that Defendant is liable for placing its allegedly defective gasoline and diesel fuel in the "stream of commerce." (*Id*. ¶ 24(u)).  Plaintiff posits that all Defendants, including Defendant, "failed to warn consumers," including Plaintiff, "of the dangers associated with occupational exposure to benzene." (*Id*. ¶ 25).  Plaintiff avers that the benzene contained in Defendants' products "[are] unnecessary for the proper functioning of the product, and therefore, could "have been eliminated or substantially reduced." (*Id*. ¶ 33).  Plaintiff further posits that Defendants made "material misrepresentations, and/or omitted material information, relating to the benzene content and health hazards of [its] products." (*Id*. ¶ 39).  As a result of these defects, as well as the material misrepresentations and omissions, Plaintiff asserts Defendants violated the duty of care owed to all consumers and workers, including Tyler Underwood. (*Id*.).

   Plaintiff filed the instant Amended Complaint asserting the following claims: (1) negligence; (2) gross negligence; (3) strict liability; (4) breach of the express and implied

1    warranties; and (5) res ipsa loquitor. (*Id.* ¶¶ 35–65).  Defendant subsequently filed the present

2    combined Motion to Dismiss and Motion for More Definite Statement, (ECF No. 265), which

3    the Court discusses below.

4    **II.    LEGAL STANDARD**

5        **A.  Motion For More Definite Standard, Fed. R. Civ. P. 12(e)**

6        "A party may move for a more definite statement of a pleading . . . which is so vague or

7    ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  An

8    order granting the motion is appropriate when the responding party cannot ascertain the

9    substance of the asserted claim. *Buckley v. Cnty. of San Mateo*, No. 14-cv-05488, 2015 WL

10   5769616, at *5 (N.D. Cal. Oct. 2, 2015).  "Rule 12(e) motions are disfavored and rarely

11   granted." *Id.* (citing *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1045 (N.D. Cal.

12   2009).

13       "Whether to grant a Rule 12(e) motion is within the discretion of the district court." *Star*

14   *Fabrics Inc. v. Norm Thompson Outfitters, LLC*, No. 19-cv-2765, 2019 WL 6894528, at *1

15   (C.D. Cal. July 10, 2019).  If the court grants a party's motion for more definite statement, the

16   court may allow leave to amend the pleading to make them consistent with the rules of pleading

17   outlined in Fed. R. Civ. P. 8. *See Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal.

18   2008).

19       **B.  Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)**

20       Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

21   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

22   The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  And the

23   complaint must "give the defendant fair notice of what the claim is and the grounds upon which

24   it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

25   ///

1    Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon

2    which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

3    555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

4    which it rests, and although a court must take all factual allegations as true, legal conclusions

5    couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

6    12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

7    of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain

8    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

9    face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A

10   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

11   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

12   standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

13       "Generally, a district court may not consider any material beyond the pleadings in ruling

14   on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

15   1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the

16   complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a

17   complaint and whose authenticity no party questions, but which are not physically attached to

18   the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.

19   Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take

20   judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282

21   (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion

22   to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

23       If the court grants a motion to dismiss for failure to state a claim, leave to amend should

24   be granted unless it is clear that the deficiencies of the complaint cannot be cured by

25   amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant

to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   **DISCUSSION**

Defendant filed a combined Motion to Dismiss and Motion for More Definite Statement. The Court begins with the Motion for More Definite statement.

### A. Motion for More Definite Statement

Defendant takes issue with the vague manner the Amended Complaint is pleaded because it fails to identify the specific facts particular to it that gives rise to the liability charged.[2] (MTD & Mot. Definite Statement 10:3–12).

Most motions for a more definite statement are based on either lack of detail or unintelligibility. "'The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendant cannot understand the substance of the claim asserted.'" *Conta v. City of Huntington Beach*, No. 8:21-cv-01897, 2022 WL 3574439, at *3 (C.D. Cal. June 22, 2022) (citation omitted). "'[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading.'" *Id*. (citation omitted).

So-called "shotgun pleadings" may be considered unintelligible. Shotgun pleadings are generally characterized as "pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the

---

[2] Pursuant to Local Rule IC 2-2(b), "for each type of relief requested or purpose of the document, a separate document must be filed." Local Rule IC 2-2(b). This rule mandates that a litigant file a separate motion for each form of requested relief. Here, Defendant's combined Motion to Dismiss and Motion for More Definite Statement requests two different types of relief, and thus, should have been filed as two separate motions. While Defendant's violation of Local Rule IC 2-2(b) is sufficient grounds to deny the Motion, the Court will nevertheless address the Motion on the merits.

plaintiff's allegations." *Sollberger v. Wachovia SEC., LLC*, No. 09-cv-0766, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).  "[P]laintiff must give the defendants a clear statement about what the defendants allegedly did wrong." *Id*. (citation omitted).

Plaintiff's Amended Complaint is not so unintelligible that Defendant cannot file any type of responsive pleading.  While vague, Plaintiff's Amended Complaint identifies that Defendant's gasoline and diesel fuel allegedly contained benzene, that Tyler Underwood purchased these products from a 7-Eleven in Nevada, and that he developed Acute Myelogenous Leukemia as a result of his exposure. (Am. Compl. ¶ 6, 23, 24(u)).  Moreover, much of the information Defendant seeks is better sought through discovery, rather than through a motion for a more definite statement. *See Beery v. Hitachi Home Elecs. (AM)*, 157 F.R.D. 477, 480 (C.D. Cal. 1993) ("If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied.").  Therefore, Plaintiff's Amended Complaint complies with Fed. R. Civ. P. 8(a) and is not so vague or ambiguous that Defendant cannot reasonably prepare a response.  Accordingly, Defendant's Motion for More Definite Statement is DENIED.

## B.  Motion to Dismiss

Defendant moves to dismiss Plaintiff's claims for negligence, gross negligence, express and implied warranty, strict product liability, and res ipsa loquitur. (*See generally* MTD & Mot. Definite Statement).  The Court will first examine Plaintiff's claims for negligence and gross negligence.

### 1.  Negligence & Gross Negligence

Defendant argues that Plaintiff's negligence claim fails because the Amended Complaint is devoid of information such as "dosage, duration, or frequency regarding [Plaintiff's] exposure to [Defendant's] gasoline and/or diesel fuel," as well as allegations permitting a reasonable inference that benzene exposure can cause Acute Myelogenous Leukemia. (MTD &

Mot. Definite Statement 6:27–7:1).  In turn, Defendant posits that because Plaintiff's negligence claim is insufficiently pled, Plaintiff's gross negligence claim "must also fail [because] gross negligence requires demonstration of conduct far beyond failure to exercise ordinary care." (*Id*. 7:4–8).

To state claim for negligence under Nevada law, a plaintiff must allege: (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages. *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 272 P.3d 727, 732 (Nev. 2012) (citations omitted).  "A claim for gross negligence claim is separate from a normal negligence claim." *Gaming v. Trustwave Holdings, Inc.*, No. 2:15-cv-02464, 2016 WL 5799300, at *6 (D. Nev. Sept. 30, 2016).  "[T]o state a claim for gross negligence a plaintiff must establish that the defendant failed 'to exercise even the slightest degree of care' in his conduct." *Id*. (quoting *Hart v. Kline*, 116 P.2d 672, 673–74 (Nev. 1941)); *see Smith v. Wolf Performance Ammunition*, No. 2:13-cv-2223, 2015 WL 2359063, at *3 (D. Nev. May 18, 2015) ("'Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a prudent man.'") (quotation omitted).

Several district courts have considered Defendant's argument that a plaintiff's complaint alleging benzene exposure is deficient because it fails the precise timeframe of exposure. These district courts uniformly rejected this argument, reasoning that at the pleading stage, a plaintiff is not expected, nor in most cases able to, articulate a claim's precise factual contours that may only later be elicited through discovery. *See Singleton v. Chevron USA, Inc.*, 835 F. Supp. 2d 144, 148 (E.D. La. 2011) ("The mere fact that Mr. Singleton does not yet point to a specific Valspar product and specific dates of exposure does not make the claim implausible under *Iqbal*."); *Moore v. BASF Corp.*, No. 11-cv-1001, 2011 WL 5869597, at *6 (E.D. La. Nov. 21, 2011) ("Plaintiffs' failure to point to the specific products . . . , and to name the exact dates when and places where exposure to defendants' products occurred does not make the

claim implausible at the pleading stage."); *Martin v. Crown Equipment Corp.*, No. 1:13-cv-174, 2013 WL 12063924, at *2 (N.D. Ga. Apr. 15, 2013) ("Plaintiffs' failure to allege the specific 'brand' of the product or the precise dates of Mr. Martin's exposure does not make their claims implausible*."); see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 982 (N.D. Cal. 2015) ("[T]he gaps in Plaintiffs' 'when' allegations are not fatal to Plaintiffs' Tobacco III claims. Instead, individual Plaintiffs' exposure to Apple's campaign can be tested after discovery permits further factual development.").

Here, Plaintiff's Amended Complaint alleges that Tyler Underwood was exposed to gasoline and diesel fuel containing benzene manufactured and sold by Defendant to the 7-Eleven gasoline station at 5700 Sun Valley Boulevard, Sun Valley, Nevada, and that this exposure to benzene caused him to contract fatal medical conditions, including Acute Myelogenous Leukemia. (Am. Compl. ¶ 6, 23, 24(u)).  Plaintiff's failure to allege the precise dates and extent of Tyler Underwood's exposure does not make the claim implausible*. See Singleton*, 835 F. Supp. 2d at 148 ("Taken collectively, the allegations that Valspar manufactured certain classes of products, that these products contained benzene, that benzene causes myeloma, and that Valspar knew or should have known based on available industry research of the dangers of myeloma, taken collectively, allow the Court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (citation omitted).

Nevertheless, the Court agrees with Defendant that Plaintiff must provide additional allegations regarding medical causation.  Plaintiff's Amended Complaint alleges that as the "direct and proximate result of his exposure to benzene, including concurrent exposure to benzene and other solvents in the benzene-containing solvent products, Tyler Underwood developed Acute Myelogenous Leukemia and multiple related adverse blood and marrow effects, cellular abnormalities, anemia, genotoxic effects and resultant DNA damage." (Am. Compl. ¶ 22).  While Plaintiff is correct that her Amended Complaint "need not be a medical

1    dissertation on leukemia causation," (Resp. 7:20–22), her conclusory allegations fail the Fed. R.

2    Civ. P. 8(a)(2) pleading requirement, which "demands more than an unadorned, the-defendant-

3    unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Plaintiff must include allegations

4    which permit the reasonable inference that benzene exposure can cause the medical conditions

5    Tyler Underwood was diagnosed with.  Accordingly, the Court will dismiss Plaintiff's

6    negligence claim with leave to amend.[3]

7                        **2.  Strict Product Liability**

8            To bring a claim for strict product liability in Nevada, a plaintiff must "demonstrate that,

9    the product at issue was defective, (2) the defect existed at the time the product left the

10   manufacturer, and (3) the defect caused the plaintiff's injury."[4] *Ford Motor Co. v. Trejo*, 420

11   P.3d 649, 652 (Nev. 2017) (citation omitted).  A plaintiff may bring a strict product liability

12   claim on the theory of defect by failure to warn, defect by design, or defect by manufacturing.

13   *Id*.

14           For the same reasons set forth above, Plaintiff's Amended Complaint does not include

15   sufficient allegations to demonstrate that the alleged defects in Defendant's products caused

16   Tyler Underwood's injuries.  Additionally, the Court notes that Plaintiff's Amended Complaint

17   alleges at length "the language that is [allegedly] omitted" from *Defendants'* products but

18   neglects to "address the language that does appear" in *Defendant's* products.  *Kwasniewski v.*

19

20   ───────────────

21   [3] Plaintiff's gross negligence claim, as an extension of her negligence claim, also requires legal causation. *See Martin v. Collier*, No. 2:11-cv-0320, 2011 WL 1628028, at *2 (D. Nev. Apr. 28, 2011).  Because the Court

22   dismisses Plaintiff's negligence claim, it will also dismiss Plaintiff's gross negligence claim without prejudice and with leave to amend.

23   [4] As with Plaintiff's negligence claim, Defendant repeats its argument that Plaintiff's strict product liability claim fails for lack of causation. (MTD & Mot. Definite Statement 7:22–23, 8:8–10).  However, "[t]he issue of causation is generally a factual issue to be determined by the trier of fact." *Lwandowski v. Taser Int'l, Inc.*, No.

24   2:06-cv-0146, 2009 WL 10692836, at *3 (D. Nev. Aug. 10, 2009) (citing *Frances v. Plaza Pacific Equities*, 847 P.2d 722, 724 (Nev. 1993).  Defendant may ultimately be correct that its products did not cause Tyler

25   Underwood's medical conditions.  At this early stage in the litigation, however, Plaintiff's Amended Complaint alleges sufficient facts to infer causation.

1  *Sanofi-Aventis U.S. LLC*, No. 2:12-cv-00515, 2018 WL 6566560, at *3 (D. Nev. Nov. 1, 2008).

2  To determine whether a failure to warn claim is plausible and just hypothetically possible,

3  Plaintiff must allege the warning labels language that currently appears on Defendant's product,

4  and why this warning is deficient under the circumstances.  If Plaintiff chooses to amend, the

5  Court advises her to include more particularized allegations as to each specific defendant to

6  demonstrate what each defendant allegedly did, or in this context, failed to do.

7  ### 3. Breach of Express & Implied Warranties

8  To state a breach of warranty claim under Nevada law, a plaintiff must establish three

9  elements: (1) a warranty existed; (2) the defendant breached the warranty; and (3) the

10  defendant's breach was the proximate cause of the plaintiff's damages. *Nevada Contract Servs.,*

11  *Inc. v. Squirrel Cos. Inc.*, 68 P.3d 896, 899 (Nev. 2003).  The Court first considers Plaintiff's

12  claim as to express warranties and then turns to the claim as to implied warranties.

13  #### a. Express Warranty

14  "Express warranties may be created by an affirmation of fact that relates to the goods or

15  a description of the goods, where the information is made part of the basis of the bargain."

16  *Radcliff v. Amiraslanov*, 381 P.3d 653, 653 (Nev. 2012) (citing NRS § 104.2313).  Express

17  warranties may also be created by a description of the goods, where the description is made part

18  of the basis of the bargain. NRS § 104.2313.

19  Defendant argues that Plaintiff's express warranty claim fails because the Amended

20  Complaint "fails to articulate specific facts or allegations that [Defendant] made any express or

21  implied statements regarding its gasoline and/or diesel fuel."[5] (MTD & Mot. Definite Statement

22  8:15–19).  The Court agrees.

23  _____

24  [5] Defendant additionally posits that Plaintiff's express and implied warranty should be dismissed because

25  depending on the year(s) Tyler Underwood was exposed, Plaintiff's express and implied warranty claims may be
barred by the respective six- and four-year statute of limitations. (MTD & Mot. Definite Statement 8:24–9:5).
The Court agrees with Defendant that Plaintiff's Amended Complaint fails to clearly allege Tyler Underwood's
precise dates of exposure to Defendant's products; the Court disagrees, however, that dismissal is appropriate on

Plaintiff's Amended Complaint alleges the following: "Defendant[] warranted, either expressly or impliedly, that their products were merchantable, safe and not unreasonably dangerous for use for the general public when in fact they were not . . . . Defendant[] also made material misrepresentations, and/or omitted material information, relating to the benzene content and health hazards of their products." (Am. Compl. ¶ 55, 57). These generalized pleadings are insufficient to allege a violation of the express warranty.

Under Plaintiff's interpretation, an adequately pleaded express warranty claim would only require a plaintiff to summarily allege that a business warranted their product was safe when in fact, it was not. Even Plaintiff's allegation regarding the purported material misrepresentation of omitted material information does not identify with any degree of specificity what the misrepresented or omitted material information was. Instead, this allegation can be reduced to the following: Defendant said their product did not contain benzene when in fact, it did. The Court is unconvinced that this generalized representation is sufficient to allege an express warranty claim. *See Reed v. Arthrex, Inc.*, No. 3:17-cv-00337, 2017 WL 4560140, at *3 (D. Nev. Oct. 11, 2017) ("Here, the Reeds fail to allege any affirmation of fact or any description by Arthrex that relates to the plate. The claim for breach of an express warranty must therefore be denied."); *Hill v. Eli Lilly and Co.*, No. 3:20-cv-

---

this basis. The possibility remains based on the timeline alleged by Plaintiff that these claims are not time-barred. Specifically, Plaintiff's Amended Complaint alleges that Tyler Underwood performed "mechanical 'side work' in various locations in Nevada and Arizona from 2010-2020." (Am. Compl. ¶ 16). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitation only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Contrary to Defendant's position, it is equally true that Plaintiff's claims may not be time-barred. To be clear, the Court is not making an affirmative finding that these claims are timely. "Indeed, the dearth of factual detail in the [Amended Complaint] makes it impossible for the Court to assess the timeliness of the claim." *Pour v. Wells Fargo Bank*, No. 2:20-cv-02447, 2020 WL 12893826, at *4 n.4 (N.D. Cal. Dec. 1, 2020). At this point in the case, the Court is unable to conclusively determine that Plaintiff's claims are time-barred. The Court advises Plaintiff that "[a] party cannot avoid dismissal simply by omitting facts essential to [her] causes of action." *Id.* In deciding whether to amend, Plaintiff should be mindful of her pleading obligations under the Federal Rules.

00250, 2020 WL 4925688, at *3 (D. Nev. Aug. 21, 2020) (dismissing the plaintiff's express warranty claim where the plaintiff did not allege "that Eli Lily made an affirmation of fact related to the goods and does not allege that an express warranty was created by a description of the goods").

Here, Plaintiff's Amended Complaint contains no allegation of "any affirmation or promise made by [Defendant] that occurred prior to" Plaintiff's purchase of its gasoline or diesel fuel that could have been a basis for the bargain. *R & O Const. Co. v. Rox Pro Inter. Group, Ltd.*, No. 2:09-cv-01749, 2011 WL 6400258, at *3 (D. Nev. Dec. 20, 2011); *Flores v. Merck & Co., Inc.*, No. 3:21-cv-00166, 2022 WL 798374, at *6 (D. Nev. Mar. 16, 2022) ("Flores fails to substantiate how Merck's representations became part of the basis of the bargain—an element of breach of express warranty claims."). "The claim of breach is possible but not plausible unless and until [Plaintiff] allege[s] the precise representation" made by Defendant so the Court can determine whether it made an affirmation of fact related to its products and if these affirmations were a "statement of fact or opinion." *Greystone Nevada, LLC v. Anthem Highlands Community Ass'n*, No. 2:11-cv-01424, 2012 WL 2782603, at *6 (D. Nev. July 9, 2012). Accordingly, the Court will dismiss Plaintiff's express warranty claim without prejudice and with leave to amend.

### b.  Implied Warranties

The Court now considers Plaintiff's implied warranty claims. Nevada law recognizes two types of implied warranties: (1) implied warranty of merchantability, and (2) implied warranty for fitness for a particular purpose. *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1469 (D. Nev. 1992) (citing NRS §§ 104.2314–2315). Plaintiff does not specify which implied warranty theory she is proceeding under, so the Court will examine both.

Beginning with the latter, NRS § 104.2315 provides for an implied warranty for a particular purpose when: (1) the seller has reason to know of a particular purpose and (2) that

1    the buyer relies on the seller's skill or judgment to furnish a good that is fit for such a purpose.

2    Here, Plaintiff's Amended Complaint fails to allege either of these essential elements.  First,

3    Plaintiff does not allege that Tyler Underwood utilized Defendant's products for a particular

4    purpose, instead "his use was ordinary." *Miller v. DePuy Synthes Sales, Inc.*, No. 3:17-cv-

5    00325, 2019 WL 4016207, at *6 (D. Nev. Aug. 26, 2019).  Second, Plaintiff does not allege

6    how Tyler Underwood relied on Defendant's judgments in determining how to use Defendant's

7    products.  Accordingly, Plaintiff's Amended Complaint fails to allege a claim under the implied

8    warranty for fitness for a particular purpose.

9          Turning to the implied warranty of merchantability claim, for goods to be merchantable,

10   they must be "fit for the ordinary purpose for which the goods are used." NRS § 104.2314.  The

11   implied warranty of merchantability is breached "when the goods manifest a defect which

12   renders them unfit for the ordinary purpose for which they are used." *Holmes v. Merck & Co.*,

13   No. 2:04-cv-00608, 2008 WL 11348410, at *3 (D. Nev. June 16, 2008) (citation omitted).

14         While the Court assumes Tyler Underwood was using Defendant's products as intended,

15   the issue here is that Plaintiff has not alleged the products manifested a defect which rendered

16   them unfit for the ordinary purpose they are used.  Put differently, Plaintiff does not allege

17   that the subject gasoline and diesel fuel "was not fit for the ordinary purpose for which it was

18   sold-*i.e.*, operating motor vehicles and other combustion engines." *Lundy v. Conoco Inc.*, No.

19   3:05-cv-477, 2006 WL 3300397, at *3 (S.D. Miss. Nov. 10, 2006) (dismissing the plaintiff's

20   implied warranty of merchantability claim where the plaintiff alleged she developed Acute

21   Promyelocytic Leukemia as a result of her exposure to gasoline and other benzene-containing

22   products); *see McCracken v. Exxon/Mobil Co.*, No. 08-cv-2932, 2009 WL 3822041, at *5 (E.D.

23   Pa. Nov. 12, 2009) ("Plaintiff does not allege that the gasoline failed to operate normally, that,

24   is, failed to power his vehicles.").  Thus, Plaintiff has not alleged that the subject products did

25   not do what it was supposed to do, and therefore, has failed to state a claim for breach of

implied warranty. *See Holmes*, 2008 WL 11348410, at *3 ("Here, there is no factual dispute that the 'ordinary purpose' of the MMR vaccine is to immunize against disease."); *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, No. 3:11-cv-0757, 2012 WL 5198502, at *3 (D. Nev. Oct. 19, 2012) ("It is undisputed that the drip tape failed to deliver water to Peri & Son's onion crop, which rendered it unfit for its intended purpose—irrigation."). Accordingly, Plaintiff's implied warranty of merchantability claim is dismissed without prejudice and with leave to amend.

### 4. Res Ipsa Loquitur

"Res ipsa loquitor is an exception to the general negligence rule" that "a mere happening of an accident or injury will not give rise to the presumption of negligence." *Pate v. Wal-Mart Stores, Inc.*, No. 2:12-cv-1377, 2014 WL 3613385, at *5 (D. Nev. July 21, 2014) (citing *Woosley v. State Farm Ins. Co.*, 18 P.3d 317, 321 (Nev. 2001). The doctrine allows a party "to infer negligence" when (1) the event is of a kind that "ordinarily does not occur in the absence of someone's negligence," (2) it is "caused by an agency or instrumentality within the exclusive control of the defendant, and (3) it was "not due to any voluntary action or contribution of the plaintiff." *Id*. at *5 (citing *Woosley*, 18 P.3d at 321).

Plaintiff acknowledges that this Court has previously dismissed with prejudice independent claims for res ipsa loquitor because it is a "theory of liability or a method of establishing liability for negligence; it is not a separate cause of action." (Resp. 11:7–11) (quoting *Zander v. Tropicana Entm't, Inc.*, No. 2:13-cv-00848, 2014 WL 794212, at *2 (D. Nev. Feb. 26, 2014); *see Piccinni v. United States*, No. 3:17-cv-00584, 2018 WL 2014068, at *2 (D. Nev. Apr. 30, 2018) (dismissing the plaintiffs standalone res ipsa loquitur claim because "the res ipsa loquitur doctrine is 'merely a rule of evidence, not a substantive rule of law'") (quotation omitted); *Hansen v. Albertson's Cos., LLC*, No. 2:19-cv-02050, 2020 WL 8261604, at *1 n.1 (D. Nev. Dec. 14, 2020) ("Hansen's complaint also includes 'claims' for punitive damages and res ipsa loquitur, which are not claims, but a remedy and theory of negligence,

respectively.") (citing 65A C.J.S. *Negligence* § 808 (2020) ("[T]he doctrine of res ipsa loquitur is not a independent cause of action or an independent legal claim. [It] describes not a substantive claim but a manner of proceeding on that claim.").  Nevertheless, Plaintiff maintains that the Court should refrain from dismissing her standalone res ipsa loquitur claim based on this court's decision in *Ingram v. Walgreen Co.*, No. 2:10-cv-01813, 2011 WL 1661505, at *2–3 (D. Nev. May 3, 2011). (Resp. 11:12–19).  In *Ingram*, the court declined to dismiss the plaintiff's res ipsa loquitur claim because it was "not redundant, immaterial, or impertinent." *Id.* at *3.

The Court considers the reasoning set forth in *Ingram* but does not find it persuasive. The weight of authority in this District has found that res ipsa loquitur is a theory of liability or a method of establishing liability for negligence and not a separate cause of action.  Plaintiff has not presented sufficient reasons for the Court to deviate from this conclusion.  Accordingly, Plaintiff's standalone res ipsa loquitur claim is DISMISSED with prejudice.

In sum, Defendant's Motion for More Definite Statement is DENIED.  Defendant's Motion to Dismiss is GRANTED.  Plaintiff's claims for negligence, gross negligence, strict product liability, and breach of express and implied warranty are dismissed without prejudice and with leave to amend because it is not clear that amendment is futile. *See Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102–03 (9th Cir. 2018) ("Leave to amend can and should generally be given, even in the absence of such a request by the party," so long as amendment would not be futile").  Plaintiff's standalone claim for res ipsa loquitur is dismissed with prejudice because amendment is futile.

///

///

///

///

IV.          **<u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that the Defendant's Motion for More Definite Statement, (ECF No. 258), is **DENIED** and Motion for Dismiss, (ECF No. 258) is **GRANTED**.

Plaintiff shall have twenty-one (21) days of the date of this Order to file an amended complaint.  Any amended complaint should remedy the deficiencies identified in this Order. Failure to file an amended complaint by this date shall result in the Court dismissing this action with prejudice.

**DATED** this ___1___ day of May, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT